UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DUSTIN JOHN KOSIK,

    Petitioner,

v.

    Civil No. 5:15-CV-11508
    HONORABLE JOHN CORBETT O'MEARA
    UNITED STATES DISTRICT JUDGE

MITCH PERRY,

    Respondent,
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS***

Dustin John Kosik, ("Petitioner"), confined at the Newberry Correctional Facility in Newberry, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his convictions for unlawful imprisonment, M.C.L.A. 750.349b; assault and battery, M.C.L.A. 750.81; and being a third felony habitual offender, M.C.L.A. 769.11. For the reasons stated below, the petition for writ of habeas corpus is DENIED.

**I. Background**

Petitioner was convicted of the above offenses following a jury trial in the Bay County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

On February 2, 2012, defendant entered the shoe store where the victim worked. The victim was present with another coworker. Defendant was ostensibly looking for dress shoes, but the store did not have defendant's size in the style of shoe he wanted. The victim "print[ed] off a little slip that said all the different stores that had that select shoe on it, and then [she] handed that to" defendant. The victim's coworker was preparing to take her break at the time and had her jacket and purse with her. Defendant left the store. Shortly thereafter, the coworker left to take her break.

Defendant returned to the store after "[m]aybe five minutes." The victim testified that defendant "asked [her] if [she] could call over to the store that the shoes were located at. And he asked [her] to go over to the actual shoes to double-check to make sure that they were the right shoes that he was looking for." The victim went over to the shoes, knelt down, pulled out the box of the particular shoe defendant wanted, and called another store on a cordless phone to verify that it had the shoe in stock. The victim testified that once she stood up, defendant "lunged towards [her] and grabbed [her], and turned [her] around...." "[H]e was standing a little bit behind me," she testified, "and he had to come at me and grab me, and put his arm all the way around me, so it'd be all the way around my far right side, and my left arm would be up against him."

The victim further testified that defendant took the phone from her and "told [her] to keep walking" as he led her into "the conference room." The victim testified that as defendant led her into the conference room, he asked whether there were any security cameras in the store. She told him that she did not know. The victim testified that defendant closed the door after he led her into the room. She further testified that a person in the main area of the store would not be able to see into the conference room if the door was shut, and that the conference room had no windows. When asked whether there were any doors leading out of the conference room, the victim responded, "Not into the conference room. Once you go into the very back room, there's an emergency exit there." The victim testified that defendant was "[p]robably about an arm's distance away" while they were in the conference room.

The victim testified that once they were in the conference room, defendant attempted to convince her that he was "joking." He asked the victim not to tell anyone about the incident and said he was "just kidding." Defendant then left the store and the victim called 911. Defendant was apprehended by police shortly thereafter.
*People v. Kosik,* 303 Mich. App. 146, 148-51; 841 N.W. 2d 906 (2013).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 497 Mich. 862 (2014).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The prosecutor failed to submit sufficient evidence to support the conviction for unlawful imprisonment. In particular, the prosecutor did not prove that Mr. Kosik confined, or secretly confined, the complainant. The conviction should be vacated.

II. The guilty verdict is against the great weight of the evidence. Mr. Kosik is entitled to a new trial.

III. Over Defendant's objection, the trial court instructed the jury that the complainant need not resist. The court lessened the prosecution's burden of proof and made it easier to convict Mr. Kosik. The Defendant is entitled to a reversal of the conviction.

IV. The trial court erroneously scored points for two sentencing variables. The trial court violated Mr. Kosik's due process rights by imposing sentence based on inaccurate information. Mr. Kosik is entitled to remand for resentencing.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

3

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to

4

show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103.

### III. Discussion

**A. Claims # 1 and # 2. The sufficiency and great weight of the evidence claims.**

In his first claim, petitioner contends that there was insufficient evidence to establish the element of secret confinement to support his unlawful imprisonment conviction. In his related second claim, petitioner contends that the verdict went against the great weight of the evidence.

Taking petitioner's second claim first, a federal habeas court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence. *Cukaj v. Warren,* 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); *Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002); *See also Artis v. Collins,* 14 Fed. Appx. 387 (6th Cir. 2001)(declining to grant certificate of appealability to habeas petitioner on claim that jury's verdict was against the manifest weight of the evidence). A claim that a verdict went against the great weight of the evidence is not of constitutional dimension, for habeas corpus purposes, unless the record is so devoid of evidentiary support that a due process issue is raised. *Cukaj,* 305 F. Supp. 2d at 796; *See also Crenshaw v. Renico*, 261 F. Supp. 2d 826, 834 (E.D. Mich. 2003). The test for habeas relief is not whether the verdict was against the great weight of the evidence, but whether there was any

5

evidence to support it. *Dell,* 194 F. Supp. 2d at 648.  As long as there is sufficient evidence to convict petitioner of these crimes, the fact that the verdict may have gone against the great weight of the evidence would not entitle him to habeas relief. *Id.*

Petitioner is not entitled to relief on either of his claims because the evidence was sufficient to convict him of unlawful imprisonment.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).  Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence at trial to exclude every reasonable hypothesis except that of guilt. *Johnson v. Coyle,* 200 F. 3d 987, 992 (6th Cir. 2000)(internal quotations omitted).

More importantly, a federal habeas court may not overturn a state court decision

that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. See *Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* For a federal habeas court reviewing the sufficiency of evidence for a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

Under Michigan law, a person is guilty of the crime of unlawful imprisonment if he or she knowingly restrains another person under any of the following circumstances:

>  (a) The person is restrained by means of a weapon or dangerous instrument.
>
>  (b) The restrained person was secretly confined.
>
>  (c) The person was restrained to facilitate the commission of another felony or to facilitate flight after commission of another felony.

*United States v. Anderson*, 608 Fed. Appx. 369, 373 (6th Cir. 2015); *cert. denied*, 136 S. Ct. 264 (2015)(citing M.C.L.A. 750.349b).

Petitioner was convicted of unlawful imprisonment under a theory that he secretly confined the victim. For purposes of the unlawful imprisonment statute, "secretly confined" means either of the following:

7

(i ) To keep the confinement of the restrained person a secret.

(ii ) To keep the location of the restrained person a secret.

M.C.L.A. 750.349b(3)(b).

Petitioner contends that there was insufficient evidence that he secretly confined the victim to support his conviction for unlawful imprisonment.

The Michigan Court of Appeals rejected petitioner's claim. The Michigan Court of Appeals first noted that although the unlawful imprisonment statute does not define the word "confine," the Michigan Supreme Court had defined "secret confinement" as meaning the "deprivation of the assistance of others by virtue of the victim's inability to communicate his predicament." *People v. Kosik*, 303 Mich. App. at 152 (quoting *People v. Jaffray*, 445 Mich. 287, 309; 519 N.W.2d 108 (1994)). The Michigan Court of Appeals further noted that they had held in a prior case that there was sufficient evidence of confinement, even though the victim in that case had been moved to several different locations by car, because "the victim 'dared not leave while in defendant's presence....'". *Id.* (quoting *People v. Railer*, 288 Mich.App. 213, 218; 792 N.W.2d 776 (2010)). The Michigan Court of Appeals held that based on these definitions, the prosecutor presented sufficient evidence to sustain petitioner's conviction for unlawful imprisonment:

> In this case, there was sufficient evidence presented for a rational jury to find both that defendant confined the victim and that the confinement was secret. The victim was taken against her will into a conference room. She was held there in an enclosed area that was not visible to anyone who may have been passing by or in the store. Defendant was standing in front of the door to the conference room. If the victim had tried to escape, defendant was within arm's reach of her and could have prevented her from doing so. The victim

8

> testified that she was frightened by defendant. Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence that defendant restricted the victim's movement within the bounds of the conference room.

*People v. Kosik*, 303 Mich. App. at 152.

The Michigan Court of Appeals further rejected petitioner's claim that the incident happened too quickly for there to be a secret confinement:

> Defendant also argues that the victim was not secretly confined because the incident was too brief in duration. This argument miscomprehends the meaning of confinement, as well as what is required for a confinement to be secret. The determination whether a person has been secretly confined is generally not dependent on the duration of the confinement. See *Jaffray*, 445 Mich. at 308, 519 N.W.2d 108. Further, the record shows that the victim was moved to a location outside the view of others, and was confined and restricted within the bounds of the conference room for a significant period. Whether and when defendant chose to release the victim is immaterial to whether there was secret confinement. Defendant's argument that he did not "keep" the victim's confinement or the location of her confinement secret because of the brief duration of the confinement fails for the same reason.

*People v. Kosik*, 303 Mich. App. at 153.

Petitioner further argues that nature of the confinement was not sufficiently egregious to satisfy the elements of unlawful imprisonment. Petitioner argues that the victim could have been discovered if a co-worker or customer had come in and walked into the conference room. Petitioner further contends that the victim could have escaped from the conference room. Petitioner also notes that he did not tie up the victim, gag her, lock the doors, or threaten her.

The Michigan Court of Appeals rejected this claim, ruling that "Nothing in the [unlawful imprisonment] statute requires a certain level of difficulty of discovery or

9

escape." *Kosik,* 303 Mich. App. at 153. The Michigan Court of Appeals concluded:

> Viewing the evidence in the light most favorable to the prosecution, the victim was unable to communicate her predicament. Defendant waited until the victim's coworker left on her break to return to the store. There were no customers in the store when defendant came back. Defendant forcefully grabbed the victim, led her into a conference room, and closed the door behind him. The room had no windows. The victim was in an enclosed area not visible to anyone who may have walked by or come into the store. Defendant was standing in front of the door to the conference room. Defendant took the phone away from the victim so that she could not call for help. Given these circumstances, a rational jury could find that the victim was deprived of the assistance of others by virtue of her inability to communicate her predicament.

*People v. Kosik*, 303 Mich. App. at 153-54.

In the present case, there was sufficient evidence for a rational trier of fact to conclude that petitioner secretly confined the victim, so as to support his conviction for unlawful imprisonment. The victim was taken against her consent into a conference room and held in an enclosed area without windows that was not visible to any persons who were passing by or in the store. Petitioner stood in front of the conference room door and was within arm's reach of the victim so as to prevent her from attempting to escape. Petitioner took the telephone away from the victim. The victim testified that she was frightened by petitioner. Based on this evidence, a rational trier of fact could have found the petitioner guilty beyond a reasonable doubt of unlawful imprisonment under a secret confinement theory.

To the extent that petitioner challenges the Michigan Court of Appeals' determination that his actions under Michigan law qualified as a form of secret

confinement, he would not be entitled to relief. State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975). What is essential to establish the elements of a crime is a matter of state law. *See Sanford v. Yukins,* 288 F. 3d 855, 862 (6th Cir. 2002). Thus, "[s]tates are allowed to define the elements of, and defenses to, state crimes." *See Lakin v. Stine,* 80 Fed. Appx. 368, 373 (6th Cir. 2003)(citing *Apprendi v. New Jersey*, 530 U.S. 466, 484-87 (2000); *McMillan v. Pennsylvania*, 477 U.S. 79, 84-86, (1986)). A federal habeas court must therefore defer to a state appellate court's construction of the elements of state crimes. *See Coe v. Bell*, 161 F. 3d 320, 347 (6th Cir. 1998). The Michigan Court of Appeals concluded that petitioner's action qualified under Michigan law to support a secret confinement theory and this Court must defer to that court's determination on this matter. Petitioner is not entitled to relief on his first or second claims.

**B. Claim # 3. The jury instruction claim.**

Petitioner argues that the trial court erred by instructing the jury that the victim did not have to resist for petitioner to be guilty of unlawful imprisonment.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal. The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete

instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-155 (1977). The challenged instruction must not judged in isolation but must be considered in the context of the entire jury charge. *Jones v. United States*, 527 U.S. 373, 391 (1999). Further, any ambiguity, inconsistency or deficiency in a jury instruction does not by itself necessarily constitute a due process violation. *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009). It is not enough that there might be some "slight possibility" that the jury misapplied the instruction. *Id.* at 191. Federal habeas courts do not grant relief, as might a state appellate court, simply because a jury instruction may have been deficient in comparison to a model state instruction. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

> The Michigan Court of Appeals rejected petitioner's claim:
>
> The trial court read CJI2d 20.26 to the jury, which is located in the chapter concerning "Sex Crimes." It provides, "To prove this charge, the prosecutor does not have to show that *[name complainant]* resisted the defendant." Defendant objected, arguing that the instruction minimized or eliminated the requirement that the prosecution prove the victim was restrained or confined. The trial court found that the instruction was "a clarifying instruction" that did not alter the prosecution's burden, but simply indicated that the victim had no duty to resist defendant.
>
> Defendant's argument that this instruction diminished the prosecution's burden of proof is without merit. The instruction merely informed the jury that the victim did not need to resist in order for defendant to be convicted of unlawful imprisonment. The instruction did not state or imply that defendant could be convicted even if the prosecution failed to prove an element of the crime beyond a reasonable doubt. Indeed, the trial court instructed the jury that it had to find that the prosecution proved each element of unlawful imprisonment beyond a reasonable doubt. "It is well established that jurors are presumed to follow their instructions." *People v. Graves*, 458 Mich. 476, 486, 581 N.W.2d 229 (1998).

> Further, defense counsel's use, in his opening and closing arguments, of the words "led," "escort[ed]," and "took" in reference to defendant's conduct toward the victim arguably implied that the victim consented to going into the conference room with defendant. It was not unreasonable for the trial court to interpret this phrasing as suggesting a lack of resistance and, therefore, conclude that it was necessary to instruct the jury that the victim did not have to resist in order for defendant to be convicted of unlawful imprisonment. The instruction clarified an issue that the trial court felt the jurors might have questioned, and the court did not abuse its discretion by giving the instruction because doing so fell within the range of principled outcomes.
>
> Finally, it is irrelevant that the instruction was adapted from one found within the "Sex Crimes" chapter of the second edition of the Michigan Criminal Jury Instructions. The instruction did not refer to sex crimes and the trial court did not in any way suggest that this was a sex crime.

*People v. Kosik*, 303 Mich. App. at 155-57 (emphasis original).

Petitioner is not entitled to habeas relief for several reasons.

First, the instruction did not shift the burden of proof because it did not relieve the prosecutor of his burden of proving the elements of unlawful imprisonment beyond a reasonable doubt. There is no requirement under the unlawful imprisonment statute that a victim is required to resist her assailant. Because this is not an element of the offense, the judge did not shift the burden of proof by instructing the jurors that the victim did not have to resist. *See e.g. Barco v. Tilton*, 694 F. Supp. 2d 1122, 1138-39 (C.D. Cal. 2010)(state trial court's instruction that motive was not element of crime charged did not reduce People's burden of proof or otherwise infect entire trial so that defendant's conviction violated his due process rights; trial court instructed jury on elements of crime charged and need for concurrence of act and specific intent, as well as on proper burden of proof and to consider instructions as whole).

13

Secondly, the Michigan Court of Appeals concluded that it was appropriate under Michigan law to give this instruction, after defense counsel gave the impression that the victim consented to go with petitioner. Federal courts are bound by the state courts' interpretation of their own laws. *See Mullaney v. Wilbur*, 421 U.S. at 690-91. The nature of a particular jury instruction that is given is a matter of state law, and a federal court is not at liberty to grant a writ of habeas corpus simply because the federal court finds the state court's decision was incorrect under state law. *Newton v. Million*, 349 F.3d 873, 879 (6th Cir. 2003). Because the Michigan Court of Appeals found that it was appropriate under Michigan law to give this instruction, this Court must defer to that determination and cannot question it. *See Seymour v. Walker*, 224 F. 3d 542, 558 (6th Cir. 2000).

Finally, even if the instruction was erroneous, it was harmless error at most because it did not invalidate the defense theory.

The U.S. Supreme Court has long held that jury instruction claims are subject to a harmless error analysis. *Hedgpeth v. Pulido,* 555 U.S. 57, 61-62 (2008)(instructing a jury on multiple theories of guilt, one of which is invalid, is subject to harmless error review); *Neder v. U.S.*, 527 U.S. 1, 9-11 (1999)(erroneous jury instruction that omits element of offense is subject to harmless-error analysis); *Johnson v. U.S.*, 520 U.S. 461, 469 (1997)("improperly instructing the jury on an element of the offense...is subject to harmless-error analysis"); *California v. Roy*, 519 U.S. 2, 5 (1996)(error in jury instruction that defined crime without including statement that jury was required to find

that defendant had intent to commit or facilitate crime had to be reviewed by habeas court under harmless error standard); *Yates v. Evatt*, 500 U.S. 391, 402-03 (1991)(instruction creating mandatory rebuttable presumption subject to harmless error test); *Carella v. California*, 491 U.S. 263, 266 (1989)(per curiam) (instruction creating mandatory conclusive presumption subject to harmless error); *Pope v. Illinois*, 481 U.S. 497, 501 (1987)(misstatement of element can be harmless error); *Rose v. Clark,* 478 U.S. 570, 579-80 (1986)(burden shifting instruction subject to harmless error review).

Petitioner's defense was that he did not intend to knowingly restrain the victim but was merely taking her to the back room in search of shoes. Had the jury believed petitioner's theory, it was irrelevant whether the victim was required to resist his actions or not. Petitioner is not entitled to relief on his third claim.

### C. Claim # 4. The sentencing guidelines claim.

Petitioner claims his sentencing guidelines were improperly scored.

It is well-established that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is basically a state law claim. *See Tironi v. Birkett*, 252 Fed. Appx. 724, 725 (6th Cir. 2007); *Howard v. White,* 76 Fed. Appx. 52, 53 (6th Cir. 2003). Petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence. *Payne v. Smith,* 207 F. Supp. 2d 627, 640 (E.D. Mich. 2002).

15

"[I]n short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt,* 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Any error by the trial court in calculating his guideline score would not merit habeas relief. *Id.* Petitioner's claim that the state trial court improperly departed above the correct sentencing guidelines range would thus not entitle him to habeas relief, because such a departure does not violate any of petitioner's federal due process rights. *Austin v. Jackson*, 213 F. 3d 298, 301 (6th Cir. 2000). The petitioner is not entitled to habeas relief on his third claim.

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28

U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right with respect to any of the claims. The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

    s/John Corbett O'Meara
    United States District Judge

Date: December 10, 2015

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, December 10, 2015, using the ECF system and/or ordinary mail.

    s/William Barkholz
    Case Manager

17